```
                    UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF WASHINGTON

CAROL A. DUNCAN,                  )
                                  )  No. CV-05-3089-CI
          Plaintiff,              )
                                  )  ORDER DENYING PLAINTIFF'S
v.                                )  MOTION FOR SUMMARY JUDGMENT
                                  )  AND GRANTING DEFENDANT'S
JO ANNE B. BARNHART,              )  MOTION FOR SUMMARY JUDGMENT
Commissioner of Social            )
Security,                         )
                                  )
          Defendant.              )
_____)
```

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 26, 31.) Attorney D. James Tree represents Plaintiff; Assistant United Sates Attorney Pamela J. DeRusha and Special Assistant United States Attorney Richard Rodriguez represent Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

On April 12, 2001, Carol Duncan (Plaintiff) filed for disability insurance benefits. (Tr. 64.) Benefits were denied initially and on reconsideration. (Tr. 31.) Plaintiff re-filed protectively for disability insurance benefits on September 13, 2002, alleging an onset date of December 31, 2001, due to back and leg injuries sustained in a 1996 motor vehicle accident, and

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

depression. (Tr. 67-68, 128.)  Benefits were denied, as was reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ). (Tr. 51.) The hearing was held before ALJ Riley J. Atkins on November 16, 2004. Plaintiff, who was represented by counsel, testified. The ALJ denied benefits and the Appeals Council denied review. (Ct. Rec. 6, 18-29.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

At the time of the hearing, Plaintiff was 53 years old. She had a high-school education and two years of college. (Tr. 462.) She was single with two adult children who did not live with her. Her past relevant work was as a grocery clerk, kitchen helper, food server and cashier. (Tr. 185, 479.) In 1996, Plaintiff was involved in a motor vehicle accident when the automobile in which she was riding collided with a truck trailer. She sustained severe injuries to her back and left lower extremities that required extensive surgery and rehabilitation. (Tr. 230-32.) After the accident, she was diagnosed with diabetes mellitus. She has a significant history of depression, and reported being hospitalized several times for emotional problems and a suicide attempt in the early 1980's. (Tr. 248.)

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged date of onset. He found Plaintiff had severe impairments of diabetes mellitus, obesity, major depressive disorder, pain disorder with both psychological and general medical considerations, and personality disorder, NOS. (Tr. 28.) He found

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

1 these impairments did not meet or equal the listings. (Id.) He
2 concluded Plaintiff had the residual functional capacity (RFC) for
3 a limited range of light work, requiring a sit/stand option, and no
4 standing and walking for greater than two hours in a normal workday.
5 (Tr. 26.) Other non-exertional limitations included moderate
6 limitations in "her abilities to understand and remember detailed
7 instructions; to maintain attention and concentration for extended
8 periods; to interact appropriately with the general public; to get
9 along with co-workers or peers without distracting them, or
10 exhibiting behavioral extremes; and to respond appropriately to
11 changes in the work setting." (Id.) He found she could not
12 perform her past relevant work, but could perform other jobs in the
13 national economy since her alleged onset date. He found Plaintiff
14 had not been disabled since December 31, 2001. (Id.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ: (1) improperly rejected the opinions of Plaintiff's treating

physicians and other medical professionals; (2) erroneously interpreted the Medical-Vocational Guidelines; and (3) erroneously failed to develop the record to include evidence of Plaintiff's intellectual functioning abilities and limitations. (Ct. Rec. 28 at 19.)

**ANALYSIS**

**A.   Medical Evidence**

Plaintiff contends the ALJ improperly rejected the opinions of Annie Stone, ARNP, Judith Landvoy, MA, mental health counselor, and Drs. Brown and Underwood, non-examining agency psychologists who completed RFC assessments in August and December 2001, respectively. (Ct. Rec. 28 at 20-22.) She argues the ALJ erroneously failed to include in his hypothetical limitations identified by these providers to the vocational expert; therefore, the vocational expert's testimony cannot be considered substantial evidence. She asserts this error requires remand. (Ct. Rec. 28 at 20, 25.)

The regulations distinguish among the opinions of three types acceptable medical sources: those who have treated the claimant; (2) those who have examined the claimant; and (3) those who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records. 20 C.F.R. §§ 404.1527, 416.927. A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

If a treating or examining physician's opinion is not contradicted, it can be rejected only with clear and convincing

reasons. *Id*. If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604. The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by and consistent with other evidence in the record. *Lester*, 81 F.3d at 830-31; *Andrews*, 53 F.3d at 1043.

Opinions from health care providers who are not "acceptable medical sources," as defined by the Regulations, are considered opinions from "other sources," which include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, friends, and other non-medical sources. 20 C.F.R. § 404.1513(d). "Other source" testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source"

testimony before discounting it.

Ms. Stone and Ms. Landvoy are considered "other sources" under the Regulations. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). As such, they may provide evidence of impairment only when those opinions are rendered by a multi-disciplinary team consisting of "acceptable medical sources" and "other sources." *Gomez v. Chater*, 74 F.3d 967 (9th Cir. 1996). Further, there must be evidence that they were working under the close supervision of an "acceptable medical source" such as a licensed physician or psychologist. *Id.* at 971. Here, Plaintiff contends Ms. Stone was working "under the direction of Dr. Garnett," and her opinions must be given the same weight as those of a treating physician. (Ct. Rec. 28 at 20; Ct. Rec. 33 at 2 n.1.) However, there are no clinical notes or records to indicate if or how often she worked with Dr. Garnett when providing health care to Plaintiff, and there is no evidence of close supervision.[1] For purposes of the Regulations and these proceedings, Ms. Stone's opinions are considered those of an "other source." *Gomez*, 74 F.3d at 971.

The record includes treatment records from Ms. Stone, dated January 2000, to October 2003. (Tr. 315-52.) A form report dated October 2003, indicates Plaintiff complained of pain and fatigue that caused her to rest between one and six hours per day. (Tr.

---

[1] Although Dr. Gritzka's 1998 report, discussed *infra*, states that Dr. Garnett treated Plaintiff for 16 years, including years prior to the motor vehicle accident, the records for the relevant time here do not reference Dr. Garnett's active participation in Plaintiff's care. (Tr. 230.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

316.) Ms. Stone opined that Plaintiff was capable working only "a few hours a day," noting Plaintiff "often finds it impossible to work 1-2 days in a row." She opined regular work would increase Plaintiff's pain and fatigue, and Plaintiff would miss four or more days of work per month due to her impairments. (Id.) These conclusions were considered by the ALJ and discussed in his decision. (Tr. 25.) He gave them little weight because (1) they were not consistent with the opinions examining physician James Damon, M.D., in his November 2002 report, (2) they were not supported by "medically acceptable diagnostic techniques," and (3) they were based on Plaintiff's self report.[2]  (Tr. 25.) These are

---

[2] The ALJ found Plaintiff not entirely credible. (Tr. 24.) As stated by the Ninth Circuit:

> An ALJ cannot be required to believe every allegation of disabling pain or fatigue, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423 (d)(5)(A). . . . Even where the claimant introduces medical evidence showing that she has an ailment reasonably expected to produce some symptoms of pain or fatigue, the medical condition may not be severe enough to preclude gainful employment.

*Fair*, 885 F.2d at 603. Thus, it is necessary for the adjudicator to assess a claimant's credibility. *See Thomas v Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Plaintiff did not challenge this finding in her opening brief, but did so in her reply to Defendant's response. (Ct. Rec. 33 at 11-18.) The ALJ gave appropriate and detailed reasons supported by the record discounting Plaintiff's allegations. *See Social Security Ruling* (*SSR*) 96-7p) (ALJ need not completely reject or accept claimant's allegations). Further, a reviewing court will not substitute its judgment where substantial

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

appropriate reasons, germane to Ms. Stone, for discounting her "other source" opinions regarding Plaintiff's ability to work.

Plaintiff argues that the ALJ's reliance on Dr. Damon's November 2002, (Tr. 309-10) report was misplaced because Dr. Damon did not review her prior medical records, which included evidence of a bulging disc and injuries due to her vehicle accident. (Ct. Rec. 33 at 3.) Prior records include a report from James Krieg, M.D., Plaintiff's orthopedic surgeon, dated April 1997. (Tr. 218-19.) Dr. Krieg reported Plaintiff had recovered "remarkably well" from her surgery, but she would have "residual dysfunction" in her left foot. He reported the injured foot may become arthritic and painful, and may require future surgery. He indicated her other injuries were less severe, and he did not expect further problems. At the time of Dr. Krieg's report, Plaintiff was not complaining of significant low back or pelvic pain. (Tr. 218-19.) Dr. Krieg noted, however, that the back injury could cause intermittent low back pain in the future. (Id.)

A report dated May 4, 1998, from examining physician Stephen Litchfield, D.O., is consistent with Dr. Krieg's report that Plaintiff's injuries were well-healed, and future surgery for the left foot and intermittent pain were reasonably expected. Dr. Litchfield opined that massage, physical therapy or manipulative therapy would be sufficient to control the pain. (Tr. 227-28.) Finally, a report from examining orthopedic surgeon Thomas Gritzka, M.D., dated December 15, 1998, summarizes in detail Plaintiff's injuries and recovery. (Tr. 229-44.) He noted Plaintiff's recovery

---

evidence supports the ALJ's findings. *Morgan,* 169 F.3d at 599.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

from the motor vehicle accident was "impressive, concerning the magnitude of her injuries." (Tr. 243.) Dr. Gritzka referenced a supplemental report from Dr. Litchfield that recommended Plaintiff seek work that "would not involve prolonged sitting or standing." (Tr. 234.)

The fact that Dr. Damon did not review these reports, written several years prior to Plaintiff's alleged onset date, does not detract from his opinions as presented. There is no evidence that Plaintiff had surgery to correct complications reasonably expected by the physicians in 1997 and 1998. The evidence does not include records of physical therapy sought to treat the asserted disabling injuries since the alleged onset date. Further, Dr. Damon is a licensed physician; he examined Plaintiff and took into consideration her report of past injuries, contemporaneous low back pain and depression. (Tr. 310.) His physical examination included objective range-of-motion testing and trained observation. (Tr. 311-12.) Based on physical examination, he concluded the objective findings revealed no basis for work restrictions. (Tr. 310.) The ALJ did not err in giving more weight to Dr. Damon's opinions, based on objective medical tests, than Ms. Stone's conclusory opinions based on Plaintiff's self-report. *See, e.g., Thomas*, 278 F.3d at 957.

In disability proceedings, the final responsibility for assessing Plaintiff's limitations and determining her RFC is reserved to the adjudicator after consideration of the relevant medical and non-medical evidence. 20 C.F.R. §§ 404.1545-46, 416.945-46; *SSR* 96-5p. Here, it is clear the ALJ considered more

than Dr. Damon's report in assessing Plaintiff's RFC. Despite Dr. Damon's opinion that there were no objective findings on physical examination to support work restrictions, the ALJ found Plaintiff was limited to light work with a sit/stand option, and no standing and walking for more than two hours in a normal workday. (Tr. 26.) This is consistent with Dr. Litchfield's 1998, recommendation that Plaintiff avoid prolonged sitting and standing. (Tr. 220, 234.) The ALJ also considered imaging reports from 2000 and 2001, which indicated a bulging disc was exerting mild pressure on the nerves, mild degenerative disease in the sacroiliac joints, and advanced degenerative disease in the mid-thoracic spine, with "mild compression deformity" in the mid thoracic area. (Tr. 19, 245, 296, 307.) The ALJ's RFC findings are more restrictive than those of George Rodkey, M.D., the non-examining agency physician who reviewed the entire medical record in June 2003. Finally, the ALJ's RFC findings reflect consideration of Plaintiff's allegations regarding her limitations. Therefore, it is clear from the record that the ALJ did not rely totally on Dr. Damon's report or those of non-examining physicians in formulating Plaintiff's physical RFC. Also, he did not totally reject Plaintiff's statements. Rather, he considered all relevant medical and non-medical evidence as required by the Regulations. (Tr. 26, 434-39.) The ALJ did not err in his evaluation of the medical evidence or in his assessment of Plaintiff's physical RFC.

Regarding Plaintiff's mental RFC, the ALJ found she was,

> [M]oderately limited in her abilities to understand and remember detailed instructions; to maintain attention and concentration for extended periods; to interact appropriately with the general public; to get along with

>       co-workers or peers without distracting them or exhibiting
>       behavior extremes, and to respond appropriately to changes
>       in the work setting.

(Tr. 26.)  Adopting the findings in Dr. Deborah Baldwin's June 2003, mental RFC assessment (Tr. 431), which are supported by reports from examining psychologist Lawrence J. Lyon, Ph.D., who evaluated Plaintiff on June 6, 2001 (Tr. 247-52), and non-examining agency psychologist James Bailey, Ph.D. [3] (Tr. 413), the ALJ concluded Plaintiff's mental impairments did not preclude sustained job performance.  (Tr. 24.)  The mental RFC findings are supported by the record in its entirety.

The ALJ found Plaintiff had suffered from mental health problems since childhood with episodes of severe depression and attempted suicide.  (Tr. 20.)  These findings are supported by the record.  (Tr. 220, 249.)  However, there was no evidence of a formal thought disorder.  (Tr. 251.)  Dr. Gritzka noted that Dr. Garnett,

---

[3]  Plaintiff argues that "moderate" limitations in Plaintiff's ability to complete a normal workday marked in RFC assessments by agency psychologists Underwood and Brown in 2001, were erroneously excluded from the ALJ's hypothetical.  However, the ALJ has no duty to include opinions of non-examining psychologists that are not supported by other evidence in the record.  *Lester*, 81 F.3d at 831. The 2001 RFC assessments were made before Plaintiff's alleged onset date.  Further, Dr. Underwood's check-box form conclusions are not supported by her narrative in which she opined Plaintiff responded well to medication and therapy, was capable of working at simple repetitive tasks and would do best in work environments that were "relatively low stress."  (Tr. 393.)

Plaintiff's family physician for about sixteen years, had tried unsuccessfully to get Plaintiff to take anti-depressants or seek counseling for her emotional problems prior to the 1996 accident. When Plaintiff agreed to take medication, her depression improved. (Tr. 230.)

In August 2001, Plaintiff agreed to resume treatment with anti-depressants, but stated she did not want to participate in mental health counseling. (Tr. 332, 333.) However, records indicate Plaintiff attended counseling with Ms. Landvoy from August to November 2001. (Tr. 277.) After seven sessions, Ms. Landvoy reported Plaintiff was handling stress better and was less anxious and depressed. (Id.) She reported Plaintiff complained of pain and an inability to work more than three or four hours a day. Ms. Landvoy concluded Plaintiff could reason well, had a limited memory with adequate understanding, poor concentration, pace and persistence, limited social interaction and limited adaptation since childhood. (Tr. 278.) The ALJ gave little weight to Ms. Landvoy's opinions due to the brief period she saw Plaintiff and the lack of objective testing to support Ms. Landvoy's conclusions. (Tr. 25.) These are reasons germane to Ms. Landvoy and are supported by the record. Therefore, the ALJ did not improperly discount her opinions.

In September 2001, Plaintiff reported to Ms. Stone that her counseling sessions were "very helpful" and she was feeling "significantly better." She was taking Paxil daily and felt improved. (Tr. 330.) In March 2003, Ms. Stone referred Plaintiff for diabetes management, stating "I have been unsuccessful in

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

helping her control her diabetes. . . . I feel that her medical problems would improve if the depression were more effectively treated." (Tr. 319.) Other than conclusory opinions contained in her medical source statement (Tr. 316-17), Ms. Stone offered no opinions regarding the impact of Plaintiff's mental limitations on her ability to work, other than to state Plaintiff's medical condition would improve if she followed treatment recommendations for her depression.

Dr. Bailey and Dr. Baldwin reviewed the entire record in January and June 2003, respectively, and found "moderate" limitations in Plaintiff's ability to understand and remember detailed instructions; to maintain attention and concentration for extended periods; to interact appropriately with the general public; to get along with co-workers or peers without distracting them or exhibiting behavior extremes; and to respond appropriately to changes in the work setting. They concluded Plaintiff could perform simple tasks with limited public contact. Dr. Bailey noted she "should be able to learn some multi-step tasks" and "concentrate on more concrete tasks." (Tr. 414.) Plaintiff offers no evidence to contradict these findings, other than her own statements at the hearing. As discussed above, the ALJ properly discounted Plaintiff's credibility with clear and convincing reasons, among them Plaintiff's lack of compliance with prescribed treatment, a reason amply supported by the record.[4] (Tr. 24.) He reasonably

---

[4] Citing *Nguyen*, 100 F.3d at 1465, Plaintiff argues she cannot be penalized for failing to seek treatment for her depression. Plaintiff's reliance on *Nguyen* is misplaced. In *Nguyen*, the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

inferred that Plaintiff's condition did not preclude work when she was compliant with treatment recommendations.[5] (Tr. 24.)

---

claimant had delayed seeking treatment for his severe depression, and the Ninth Circuit disapproved the ALJ's use of "lack of treatment" to reject his allegations of a mental disorder. *Id.* Here, the ALJ was not rejecting the existence of Plaintiff's mental impairments. Plaintiff had been diagnosed over the years with depression and had been treated effectively with anti-depressants and counseling. She was advised repeatedly to take anti-depressants consistently and attend counseling. Medical records indicate that when she followed treatment recommendations, her condition improved. Further, medical providers consistently reported Plaintiff's lack of compliance with diabetes treatment aggravated her mental and physical condition. A claimant's refusal to follow treatment recommendations for a recognized impairment without good reason is not consistent with a finding of disability. *See, e.g.,* 20 C.F.R. §§ 404.1530, 416.930.

[5] In February 2004, Ms. Stone continued to report Plaintiff's chronic depression and unwillingness to seek treatment, stating, "I told her that I did not feel that anti-depressant medication alone was adequate and that she would benefit from psychotherapy." (Tr. 440.) In April 2004, Plaintiff was seen by Shirley Roffe, M.D., for a psychiatric evaluation and medication management review. (Tr. 445-48.) Dr. Roffe diagnosed major depression (recurrent, severe) and recommended continued psychotherapy. Noting Plaintiff's medication noncompliance, she recommended continued medication management. (Tr. 448.)

The ALJ did not err in evaluating Plaintiff's mental limitations and he properly included them in his hypothetical question at the hearing. (Tr. 480-81.)

**B.   Medical-Vocational Guidelines**

Plaintiff argues the ALJ erred in interpreting the Medical Vocational Guidelines (Grids), contending the Grids dictate a finding of "disabled." (Ct. Rec. 28 at 23.) She reasons that because the ALJ found her ability to perform light work[6] was limited to no standing or walking for more than two hours a day, this places her in the "sedentary" work[7] category, in which case the Grids direct a finding of "disabled." (Ct Rec. 28 at 23.) This issue was addressed specifically by the Ninth Circuit in *Thomas v. Barnhart,* 278 F.3d 947, 960 (9th Cir. 2002), in which the court held where the

---

[6] The Regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567, 416.967. Light work also requires an ability to stand or walk for six out of an eight-hour day. *SSR* 83-10.

[7] "Sedentary" work requires an ability to sit for six out of an eight-hour day. A certain amount of occasional walking and standing is often necessary. §§ 404.1567, 416.967. The definition of "occasional" walking and standing is defined as no more than two hours in an eight-hour day. *SSR* 83-10.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

Grids "do not adequately take into account claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted." *Id. (Citing Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000.))

As discussed above, Dr. Damon opined Plaintiff's physical condition required no work restrictions. Agency physician George Rodkey, M.D., assessed Plaintiff capable of lifting 50 pounds occasionally, 25 pounds frequently, sitting and standing for about six hours in an eight-hour day, with unlimited capacity to push and/or pull. (Tr. 435.) Considering all relevant evidence, and giving Plaintiff the "benefit of the doubt," the ALJ found she was limited to light work, with the restriction on standing and walking, which placed Plaintiff somewhere between "sedentary" and "light" exertional capacity. (Tr. 26.)

Because the ALJ's RFC findings did not fit exactly in the exertional criteria of "light" work, he properly enlisted the assistance of vocational expert Dennis Elliot at step five to opine whether Plaintiff could perform other work in the national economy. *Thomas*, 278 F.3d at 960. Presented with a hypothetical individual who could perform a limited range of light work, but required a sit/stand option, Mr. Elliot identified three "light" level jobs: agricultural produce sorter, photo finisher and seedling sorter. (Tr. 481.) When asked specifically by the ALJ if Plaintiff's restriction of no standing/walking for more than two hours in a workday would impact job performance, Mr. Elliot stated the photo finisher and seedling sorter jobs accommodated the sit/stand option and "would still fall within the parameters described." (Tr. 481.)

Describing the specific job requirements, including lifting requirements, Mr. Elliot also testified the no standing/walking for more than two hours a day restriction would not put the jobs in a "sedentary" classification, and that his testimony was consistent with the *DICTIONARY OF OCCUPATIONAL TITLES*. (Tr. 482-83.)  The ALJ fulfilled his obligation in determining Plaintiff's occupational base by consulting the vocational expert.  The ALJ did not err at step five when he relied on the vocational expert's testimony that Plaintiff could perform jobs classified as "light" work with the sit/stand option and no standing or walking more than two hours per workday.  Because the vocational expert also testified those jobs existed in Oregon in significant numbers, the ALJ did not err when he determined Plaintiff was "not disabled." (Tr. 27.) *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (2005)(a vocational expert's recognized expertise regarding job requirements and number of jobs in the national economy is properly relied upon by the ALJ).

**C.    Development of the Record**

Plaintiff argues the ALJ should have developed the record to include intelligence testing, because Drs. Lyon and Damon estimated she had "low level" intelligence. (Ct. Rec. 33 at 10.)  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir 2001), *citing Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  Under the Regulations, it is Plaintiff's duty to prove she is disabled by furnishing medical evidence of an impairment.  20 C.F.R. § 404 1512(a).   Here, Plaintiff did not

submit evidence of intellectual functioning deficits and did not claim this impairment until after the ALJ hearing. (*See* Tr. 30-34, 43, 128, 184.) The ALJ has no "duty to develop the record by diagnosing [an impairment]." *Mayes,* 276 F.3d at 459. Plaintiff has not shown that the evidence of record is either ambiguous or inadequate to evaluate her claimed impairments of back injury, affective disorder (depression) or diabetes mellitus. Dr. Damon's subjective observation is insufficient to create an impairment; his speciality is not psychology and his "belief" does not rise to the level of a mental health diagnosis. *See* 20 C.F.R. § 404.1527(d)(5). Contrary to Plaintiff's assertion, Dr. Lyon, examining psychologist, reported Plaintiff presented in the "low average range" intellectually and found no evidence of formal thought disorder. (Tr. 250-51.) Plaintiff's treating ARNP, Ms. Stone, made no mention of intellectual deficits, and noted Plaintiff presented significantly better when compliant with diabetes management and depression treatment. (Tr. 319, 330, 440.) Ms. Landvoy, Plaintiff's mental health counselor, made no mention of intellectual deficits. (Tr. 275-78.) None of the reviewing psychologists opined Plaintiff suffered organic mental disorders, mental retardation or exhibited intellectual deficiencies. Dr. Roffe, psychiatrist, noted "an incredible amount of cognitive impairment, lack of memory and lack of recall" in her April 2004, medication management report when Plaintiff was not complying with her medication regime, but reported "no evidence of cognitive impairment" in May 2004, once Plaintiff was taking her medication. (Tr. 445.) Because there was no evidence or claim of intellectual functioning impairment, the ALJ

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

had no duty to develop the record regarding Plaintiff's intellectual functioning.

**CONCLUSION**

The ALJ's findings are based on substantial evidence. He properly evaluated the medical evidence in assessing Plaintiff's mental and physical RFC. The ALJ did not err in relying on the vocational expert's opinion that Plaintiff could perform "light" work with a sit/stand option and such work was available in the national economy. The ALJ did not have a duty to order additional testing of Plaintiff's intellectual abilities. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 26)** is **DENIED**;

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 31)** is **GRANTED**;

3. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED November 30, 2006.

                    S/ CYNTHIA IMBROGNO
               UNITED STATES MAGISTRATE JUDGE